NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **CHRISTY RODERICK,** : | | |
| : | Civil Action No. 06-CV-0517 (PGS) | |
| Plaintiff, : | | |
| : | | |
| v. : | | |
| : | OPINION | |
| **JO ANNE B. BARNHART,** : | | |
| **COMMISSIONER OF SOCIAL** : | | |
| **SECURITY,** : | | |
| : | | |
| Defendant. : | | |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court pursuant to section 405(g) of the Social Security Act (Act) as amended, 42 U.S.C. 405(g). Plaintiff, Christy Roderick ("plaintiff" or "Roderick") seeks a review of the final decision of the Commissioner of Social Security Administration denying her claim for Disabled Child Benefits and Supplemental Security Income Benefits. The Court has jurisdiction to review this matter under Section 405(g) and 1383(c)(3).

After several administrative hearings, the Administrative Law Judge (ALJ) conducted an evidentiary hearing and found that plaintiff was not disabled and not entitled to Child's Insurance Benefits under Section 202(d) of the Social Security Act, or Supplemental Security Income payment under Section 1602 and 1614(a)(3)(A) of the Act. The Appeals Council denied plaintiff's request for review of the ALJ's decision. This instant action was commenced on February 3, 2006.

1

The issues before this Court are whether the Commissioner's decision to (a) deny Adult Child's Insurance Benefits for the period April 1, 1998 through January 3, 1999; and (b) deny Supplemental Security Income benefits for the period April 30, 2003 through December 21, 2004 is supported by substantial evidence.

I.

Christy Ann Roderick is 30 years of age, single and living with her mother. She is a high school graduate with job training as a bartender. She is extremely obese. She is 5' 6" and weighed 348 pounds in 2004. Plaintiff was diagnosed with diabetes in January, 2004, and suffers from depression. In addition, plaintiff has a history of ear and sinus problems and sleeping difficulties. Her medications include Glucofage for diabetes, Clariten D, Afrin nasal spray and several different pain relieving aspirin.

Plaintiff testified that she is unable to work because of her obesity, left knee pain and problems with circulation. Her knee pain is "usually constant" and walking, standing or sitting for long periods of time causes pain. According to Roderick, she can walk about half a block before experiencing pain and shortness of breath. (R. 33). She further testified that she is only able to stand for about five minutes, and sit for about 20-30 minutes before experiencing extreme back pain.

Plaintiff has also suffered from depression since high school. An average day consists of sitting in a dark room at home with migraine headaches. (R. 34). Her headaches occur "at least twice a day," and they last anywhere from a half hour to a few hours. (R. 35). When questioned about her ability to lift things, she testified that she is unable to lift "even a gallon of milk from the car" because her right hand goes numb. She further testified that her handwriting is illegible. (R. 36).

Her past work history includes experience as a part-time cashier (March, 1995 - July 1995); full-time operator for an answering service (August, 1997 - April, 1998); full-time shoe store employee (July, 1995 through November, 1995); and part-time telemarketer (November, 1995 - May, 1996). (R. 105). The longest period of time plaintiff has held a job is eight months as a telephone operator. This position required sitting for 8 hours and lifting less than 10 pounds. In her most recent job as a part-time telephone operator, she was fired because the messages she recorded were difficult to read, and she constantly needed to move around. (R. 38). She described her knee problem as "It feels like it is blowing up. It's very uncomfortable. It's just very painful" and that her knee swells up and she loses circulation below the knee, and her feet are numb. ( R. 39). Her previous work also includes work as a cashier but she testified: "I couldn't stand it. It was a standing job and I couldn't do more than four hours and they needed me longer." She also worked at Payless Shoe Store four hours a day as a cashier, and helped stock the shelves. She was fired from Payless because she could not lift the boxes over her head to stock the shelves. (R. 41). She testified that she has never been able to work full-time. Driving is difficult because of the sitting and gripping the steering wheel. (R. 45). She seldom leaves her house. She sits on the porch once in a while and visits the doctor once a month. She does not visit friends or relatives. The last time she drove a car was approximately a month prior to the hearing when she picked up her brother at college. Plaintiff has tried prescription diet pills several times throughout the years since she was a little girl in order to lose weight, but was never successful. (R. 47).

Medical Findings

Dr. Alex Kowelanko has treated plaintiff since 1981. A review of his notes from 1992 through 2003 indicate that plaintiff had consistently complained of sleep problems; knee pain

resulting from a 1998 motor vehicle accident; knee, neck and back pain from a 1990 motor vehicle accident; as well as anxiety, depression, sore throats and concerns about her weight. Hospital reports from the 1998 motor vehicle accident indicate that x-rays were performed on plaintiff's knee with an impression of Grade III-IV chondromalacia of the patella.

      On June 13, 2003, Dr. Kowelanko submitted a disability questionnaire to the NY State Office of Temporary and Disability Assistance. At that time, plaintiff's treatment was "infrequent". His treating diagnosis of plaintiff was obesity, depression, chronic gastritis and allergic rhinitis. He indicated that she had a long history of various diets and weight loss medications, and that she refuses to take antidepressant medication. He noted that she sees an ear, nose and throat specialist for her allergies. Dr. Kowelanko also noted that she had weight problems since childhood, uses Allegra for allergic symptoms and Pepcid AC for gastritis. He did not find any muscle spasm, sensory, motor or reflex deficits. The section regarding laboratory findings was answered "none". Her gait was normal and he made no findings with regard to loss of motion. His opinion with regard to her ability to function in a work setting was that she would have difficulty due to her poor self image. According to Dr. Kowalenko, Roderick can stand and/or walk less than two hours per day and sit less than six hours per day. He put no limitations on her ability to push and/or pull. From a mental disability perspective, he found she was depressed, but found no limitations on her ability to understand and concentrate.

    About a year later, Dr. Kowelanko submitted a letter to the ALJ. In contrast to his opinion in 2003, he stated that plaintiff's rapid weight gain led to other medical problems such as depression, diabetes and stress related migraines. In his opinion, plaintiff is unable to work due to the

debilitating problems and her weight. He stated she needs treatment with doctors who can treat her specific problems, and that without proper care her problems would worsen.

On July 9, 2003, Joseph Lamanna, D.Ed. of the Industrial Medicine Associates of Newark, New Jersey examined plaintiff. This was a psychiatric consultative exam. At that time, plaintiff complained of a litany of things, including, but not limited to, difficulty sleeping, loss of appetite, and numerous depressive symptoms. Plaintiff denied current thoughts of suicide; but complained of panic attacks about once a week, caused by being in public places. She denied any symptoms associated with manic episodes, thought disorder, or cognitive defects.

Dr. Lamanna found her overall social skills were adequate including her personal hygiene and grooming. Her thought processes were coherent with no evidence of psychosis, but she displayed a depressed affect. Plaintiff's overall intellectual functioning (insight, judgments and thought process) was about average. She cooks and cleans. She drives a car, and can travel via public transportation, but she does not shop due to panic attacks. She does not socialize, but her family relationships are good. Her days are spent sleeping, watching television, and reading. Dr. Lamanna's diagnosis was depressive disorder, panic disorder with agoraphobia (fear of losing control in a public place) and generalized anxiety disorder. Her prognosis was fair, given persistent psychological problems.

On July 9, 2003, plaintiff was seen by Lisa Zhang, M.D. of the Industrial Medicine Associates of Newark, New Jersey for an internal medicine examination. This was also a consultative exam. Plaintiff's chief complaint was obesity since childhood, sinus problems, and headaches. Her medications were a Claritin 1 tablet every day and Nasacort, one spray every day.

At the time, plaintiff's weight was hovering at 400 pounds with normal blood pressure. She was in no acute distress. She complained of leg pain, but her gait was normal. She could not walk toe and heel due to pain. Plaintiff was unable to squat because of knee pain. She got off the examination table without assistance, and rose from a chair without difficulty. The remainder of the physical examination was essentially normal. Examination of the cervical spine revealed full flexion, extension, lateral flexion, and full rotary movement bilaterally straight leg raising was negative with no point pain. Plaintiff demonstrated full range of motion in the shoulders, elbows, and wrists bilaterally. There was full range of motion in both ankles. Strength was 5/5 in the upper and lower extremities. Her joints were stable and nontender and there was no redness, heat or swelling. The neurologic examination showed no motor or sensory deficits. Hand and finger dexterity were intact and grip strength was good. Dr. Zhang's diagnosis was obesity, allergies, sinus infection, chronic left knee pain, and arm and leg pain with a poor prognosis. Dr. Zhang opined that plaintiff had marked restriction for walking, a mild restriction for squatting and kneeling due to her obesity and knee injuries. The radiology report for an x-ray of plaintiff's spine revealed space narrowing at L5-S1 and straightening of the lordotic curve. There was no spondylolisthesis or spondylolysis present or "lipping". Heights of the lumbar vertebral bodies were maintained. An x-ray of the left knee revealed mild degenerative joint disease.

<u>Reports by Non-Examining Physicians and Psychologists</u>

A physical residual functional capacity (RFC) assessment was done on October 21, 2003 by Dr. S. Klein, a state agency review physician. Dr. Klein opined that plaintiff could lift 10 pounds occasionally and less than 10 pounds frequently. She can stand/walk for at least 2 hours and sit with normal breaks for a total of about six hours in an 8 hour workday. Pushing and pulling was

unlimited. He rated her RFC as sedentary with environmental restrictions because of her history with sinus problems. With regard to plaintiff's limitations, there were no postural, manipulative, visual or communicative limits noted.

Plaintiff's mental residual functional capacity was also reviewed by a state agency review physician. On September 4, 2003, Daniel Mangold, M.D., reviewed the medical evidence and prepared a RFC assessment from a psychiatric viewpoint. The assessment was based on affecting disorders and anxiety-related disorders of the Listing of Impairments found at 20 C.F.R. 404, Subpt. P. App. 1. Dr. Mangold noted Dr. Lamanna's previous diagnosis of depressive disorder (not otherwise specified), panic disorder with agoraphobia, and generalized anxiety disorder; but opined that her impairment did not precisely satisfy the diagnostic criteria for a listing. He assessed plaintiff's functional limitations as a moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace, and, one or two episodes of decompensation. He concluded that plaintiff's mental impairments would not prevent her from performing simple, repetitive work in a low-contact setting. More specifically, he concluded that plaintiff would have moderate limitations understanding and remembering detailed instructions but was not significantly limited in her ability to remember locations and work-like procedures and to understand and remember very short and simple instructions. He also assessed moderate limitations in her ability to carry out detailed instructions, to concentrate for an extended period, to be punctual and maintain regular attendance, and to complete a normal workday and workweek without interruptions from psychologically based symptoms. In addition, Dr. Mangold assessed moderate limitations in plaintiff's ability to interact appropriately with the general public, to accept instructions and criticism from supervisors, and to

get along with coworkers without exhibiting behavioral extremes. Dr. Mangold concluded that plaintiff was moderately limited to adapting to unfamiliar places or use public transportation and to make plans independently of others. Dr. Mangold also concluded that there was insufficient medical evidence concerning the time period of January 4, 1995 through January 4, 1999 to make a judgment with regard to the severity of impairments for purposes of determining whether plaintiff was entitled to Child Disability Benefits.

II.

With regard to Child Insurance Benefits, there is substantial evidence supporting the decision to deny such benefits. The relevant period is April, 1998 through January 3, 1999. Although there are some medical records from Rahway Hospital for the time period, none of them conclude or remotely corroborate the contention that plaintiff can not work at any job. In fact, in 2003, her primary physician. Dr. Kowalenko concluded that plaintiff could stand "for less than 2 hours" and "sit for less than 6 hours;" however, the doctor did not conclude plaintiff was disabled at that time[1]. (R. 192-204). In addition, Dr. Mangold, a state agency review physician concluded similarly. (R. 238). Based on the absence of evidence of disability during that time period, the plaintiff's case for Child Insurance Disability is dismissed.

III.

At oral argument, plaintiff's attorney argued only one point. It involved an answer to an interrogatory propounded by the ALJ upon a vocational expert (Rocco J. Meola) who was retained to assist the ALJ in determining whether there were any jobs available which plaintiff could perform.

---

[1] About a year later, Dr. Kowelenko found plaintiff to be disabled.

Although ten questions were asked, the last one is germane. The ALJ queried whether a person with certain impairments similar to those of plaintiff could work. More specifically, the question stated:

> Hypothetical Questions: Assume an individual of the claimant's age, education and work history. Assume further that this individual is restricted to sedentary work, cannot use her right dominant hand for continual gripping or continual fine fingering manipulations, must work at a job in which she can sit or stand at her election, at appropriate half hour intervals and must work in an environment free from concentrations of dust, smoke, fumes, and other pulmonary irritants. With these restrictions, are there jobs available that such a person can do in the local or national economy?

Mr. Meola's response was:

> With the restrictions listed in the above hypothetical question, an individual will not be able to work in the competitive labor market. The occupational base is severely eroded for a person with these restrictions leading to this conclusion. (R. 269).

Despite Mr. Meola's conclusion, the ALJ does not substantively address this response in his Opinion.

    At oral argument the parties agreed that in the ordinary practice of Social Security law, hypothetical questions are often propounded by an ALJ upon an expert retained by the Agency. In the usual course, the ALJ forwards the questions to the parties for review and comment prior to submission to the expert. Often there are a series of hypothetical questions setting forth different facts. This occurs because the questions are propounded when the record is open, and prior to the ALJ's deliberations and fact finding. Once the record is closed and the ALJ completes his fact finding, then the ALJ adopts the response to the hypothetical questions which is consistent with his factual findings. The difference here is that the ALJ formulated only one hypothetical question, and then failed to address why he did not consider Mr. Meola's response in his decision. The Agency

does not refute the above, but sidesteps the argument by contending that there is substantial evidence supporting the ALJ's decision, and the ALJ is not bound to accept the findings of the vocational expert. *See*, *Craigie v. Bowen*, 835 F. 2d 56, 58 (3d Cir. 1987).

In *Craigie*, the denial of benefits was upheld by the Third Circuit because there was substantial evidence supporting the Agency's decision. More importantly, the Agency discounted the opinion of a vocational expert who found Craigie could not perform sedentary or light work. The Court observed that much of the expert's opinion was based on "symptoms described by Craigie" which the administrative law judge had discredited. The Court held since the judge "did not have to accept Craigie's testimony, he did not have to credit the expert's testimony that was predicated upon it." *Id.* at 58. Interestingly, the Court furthered that the expert found plaintiff could perform about 200 jobs if some but not all of Craigie's symptoms were considered. *Id. See also*, *Dumas v. Schweiker*, 712 F. 2d 1545 (2d Cir. 1983). Unlike *Craigie*, the ALJ does not address the expert's findings at all. He gave no indication why he did not consider Mr. Meola's opinion. Accordingly, the Court is left without any guidance upon which to assess whether there is substantial evidence to reject the vocational expert's conclusion in response to the hypothetical question. The reason is crucial to the outcome because the ALJ found that portions of the opinions of most of the medical experts were groundless.

In cases such as this, the administrative law judge most often relies on the medical evidence, in whole or in part, to support his findings of fact. 20 C.F.R.§416.912.  Notwithstanding same, the administrative law judge, in his discretion, may reject the findings of medical and expert evidence. *See*, *Craigie v. Bowen*, 835 F. 2d 56, 58 (3d Cir. 1987). In this instance, the ALJ assessed the opinions of physicians in terms of what weight he gave to each opinion (SSR 96-6 p). It appears the

ALJ discounted the weight to be given to the opinions for various reasons; but he consistently cast aside any opinion that was based on the subjective complaints of plaintiff because he found the plaintiff lacked credibility. He noted "the claimant's allegations are not very credible or very consistent with the evidence as a whole" and her complaints "must be viewed with some degree of skepticism since they may be self-serving." As a result, it appears any findings made by any physician based upon plaintiff's subjective complaints were discounted. A review of the ALJ's findings demonstrates the point. He determined:

    \*    Dr. Kowelanko's opinion that claimant could stand or walk less than 2 hours was given "significant but relatively little weight."

    \*    Dr. Kowelanko's opinion dated June 14, 2004 that plaintiff could not work was "not entitled to particular weight" because it called for a legal rather than medical conclusion.

    \*    Dr. Kowelanko's opinion regarding claimant's mental health was given "relatively little weight because the doctor was not a mental health specialist."

    \*    Dr. Zhang, a consulting internist, opined that claimant had marked restriction in walking and should avoid smoke, dust and other respiratory irritants. Her findings were given "significant, but less than substantial weight" because the doctor did not consider diagnostic study findings, and the limitations described in her report were "stated in vague terms".

    \*    Dr. Verna Ya, a state review agency physician, in a one page report determined claimant could perform sedentary work. Her report was given "substantial weight;" but it is noteworthy that her opinion was based on a review of medical records, and not a physical examination.

    \*    Dr. Lamanna, the consulting psychiatrist, found claimant suffered from depression (NOS). Although not entirely clear, it appears his opinion with regard to depression and agoraphobia "merited little weight", but certain observations Dr. Lamanna made of the plaintiff were entitled to "substantial weight."

    \*    The opinions of several state review agency mental health specialists agree that claimant could "perform simple, repetitive work in a low contact setting;" however, this finding was given "little adjudicative weight" because these physicians did not examine the claimant.

It is obvious that the ALJ's rationale for disregarding or minimizing the weight to be given to the physicians' opinions is due to the fact that the ALJ heard the plaintiff's testimony and observed her demeanor, and based on same, discredited most, if not all, of plaintiff's complaints. To the extent the physicians based their opinions on her subjective complaints, he set them aside. The regulations permit the ALJ to consider credibility. 20 C.F.R. §404.1529(c). "The credibility of witnesses is quintessentially the province of the trier of fact." *See, generally, Scully v. Wat, Inc.*, 238 F. 3d 497 (3d Cir. 2001). The ALJ has the discretion to evaluate the credibility of the plaintiff's complaints. *Jenkins v. Commissioner*, 2006 U.S. App. Lexis 21295 (3d Cir. 2006). To the extent the physicians relied on subjective complaints, the ALJ afforded them little weight because he did not believe plaintiff was credible. For some unknown reason, the ALJ did not follow this same procedure with regard to Mr. Meola's response to the hypothetical question.

A claimant is considered disabled under the Social Security Act if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §423(d)(1)a. A plaintiff will not be considered disabled unless he or she cannot perform his or her previous work and is unable, in light of his or her age, education, and work experience, to engage in another form of substantial gainful activity existing in the national economy. 42 U.S.C. §423(d)(2)(a). The Act requires an individualized determination of each plaintiff's disability based on evidence adduced at a hearing. *Sykes v. Apfel*, 228 F. 3d 259, 263 (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983); *see* U.S.C. §405(b). In this case there is an opinion by Rocco Meola, a vocational expert, that plaintiff is unemployable under certain circumstances as stated in his response to a hypothetical question. The court recognizes that

hypothetical questions engender issues concerning the sufficiency and accuracy of the question, and such questions are not a perfect means of adducing expert testimony. *Allen v. Barnhard*, 417 F. 3d 396 (3d Cir. 2005); *see generally, Ramirez v. Barnhart*, 372 F. 3d 546 (3d Cir. 2004).  However, in order to have a meaningful judicial review, the ALJ must discuss the evidence and explain his reasoning.  In this case, the ALJ must explain his rationale why the hypothetical question and the response thereto were not considered.  Without doing so, it can not be found that there was substantial evidence to support the ALJ's decision.  *Burnett v. Commissioner*, 220 F. 3d 112, 119 (3d Cir. 2000).  The matter is affirmed in part and remanded in part for further proceedings consistent with this opinion.


April 3, 2007                                             *s/Peter G. Sheridan*
                                                                   PETER G. SHERIDAN, U.S.D.J.